## FRANK & ADLER v. HUMPHREYS.

1. A reference to the jury of all the issues in a chancery cause cannot be declared error, where it was done without objection, and where none of the exceptions raises this question.

2. The Circuit Judge committed no error in correcting counsel's statement to the jury of the evidence, and in directing the jury to be governed by his notes of testimony as read to them.

3. In the trial by a jury of an issue ordered out of chancery, involving the validity of a composition made with creditors, the Circuit Judge

charged the jury that "if defendant innocently omitted to mention the insurance money or to include it in his statement of assets, it was no fraud," *Held,* that as this issue was to inform the judge's conscience, and as he himself found that this money was not properly a part of the debtor's assets applicable to the claims of his creditors, his charge, if erroneous, was not material.

4. An issue of fraudulent misrepresentation is a question of fact, and the verdict of a jury thereon, approved by the Circuit Judge, not disturbed, the weight of testimony not being opposed to their findings.

5. Error in the admission of testimony, not affecting the result, no ground for new trial in this case.

Before KERSHAW, J., Greenville, November, 1883.

This was an action by Frank & Adler against William C. Humphreys, commenced in February, 1883. The appeal was from the following decree:

This action was brought by the plaintiffs to set aside the release of a debt due them by the defendant, alleging that it was given upon a general composition of debts between the defendant and all his creditors, whereby defendant was discharged upon the payment of forty per cent. of the amount due upon the claims against him, which was procured by a false statement of the amount and value of his assets and other misrepresentations made by the defendant to his creditors. The prayer of the complaint in substance is that the release of plaintiffs' demand be declared null and void, and the payment stand merely as a payment *pro tanto;* that the plaintiffs have judgment for the balance of their debt, or such other relief as they may be entitled to. The defendant by his answer denies the frauds alleged.

The cause was placed upon calendar one, and heard as a jury case. After a protracted hearing, a great deal of testimony, and an exhaustive argument, both upon the law and the facts, the case was submitted to the jury and they found for the defendant. The jury were charged in accordance with the requests in writing of plaintiffs' counsel, with such further explanation as occurred to the presiding judge to be proper. After the rendition of the verdict, plaintiffs' counsel made a motion, upon the minutes, for a new trial, heard upon the facts, and upon supposed errors of the presiding judge.

While they moved for a new trial, the plaintiffs' counsel also insisted that this was really a case in chancery, to be decided by the judge, one of them claiming, however, that the verdict should not have the usual effect of findings on issues submitted. Defendant's counsel conceded that this was properly a case in chancery, to be decided by the court upon the facts as settled by the verdict, so far as the court was satisfied with the verdict, as in all cases submitted from a court of chancery to a jury. In this latter view I fully concur, and if the case had resulted differently, and the court had gone on to decree relief to the plaintiffs, all the creditors would have been called in to share in the benefit of the decree, if the entire compromise had been held void, or at least all the compromising creditors, if the release was confined to subjecting a particular fund to distribution among them. There will be something more to be said upon this subject hereafter.

The complaints against the presiding judge will now be noticed. Upon his examination in chief, when the defendant was stating in a narrative form his means of meeting the compromise, he said: "I had two thousand dollars, and was selling a hundred dollars a day, and therefore I asked for thirty days' time. I also went to Alexander and asked him about getting the insurance money. I had the insurance money then in my safe. Alexander had signed the receipts under the assignments; the money was to come to Alexander, and the companies required his receipt. I used the money in my business and in settling these claims." The witness was here led by the examination to speak of other matters. Afterwards the subject was resumed, and he said: "I commenced paying off on the 9th day of February. From sales and cash I had $5,600. After the creditors had accepted I took the checks for the insurance money to Alexander. The checks were payable to Alexander. I did not get permission to use the money until after the compromise. That was $1,760. It was paid a little before it was due."

Plaintiffs' counsel in the argument to the jury—the closing argument—having insisted to them that defendant had said that, at the time of the compromise, he "had the insurance money then in his safe," without any qualification, I thought it my duty to remind the jury of what else he had said on the subject, in

order to prevent their being misled as to what the evidence had been. I therefore read the passage of the testimony last quoted to the jury. The counsel then turned to the jury, and, as I thought, appealed to their recollection, against my statement as to what the witness had said. I told him he must not do that. This was one of the grounds insisted on for a new trial.

I am authorized by law to state the testimony, and when counsel in the closing argument undertake to say what a particular witness said, and confines his statement to a single remark, and insists upon that as the testimony of the witness upon that point, I consider that I would be derelict to my duty if I did not also call to the attention of the jury whatever else the witness may have said upon the same point, explaining or qualifying the remark stated to the jury as his evidence upon the subject. If that be my duty, I cannot conceive that it is proper for counsel, when I have stated the testimony, to insist to the jury that his own statement was the correct one. As I do not consider that the jury were misled in any way by this circumstance, I do not regard the point as material in any respect. If what was said by the presiding judge was calculated to induce the jury to believe that they were bound to accept the statement of the judge as to what the testimony really was, in the place of their own recollection or knowledge of it, plaintiffs' counsel ought to have asked that the jury be charged otherwise.

I have no doubt, however, that the jury understood as I did, that, when the witness loudly said, "I had the insurance money then in my safe," he had reference to the *checks* for the insurance money, as was made fully to appear when he came to speak of particular transactions thereto. The checks, he said, were afterwards transferred to him by Alexander, and if that statement were not true from the nature of the business, its falsity could easily have been shown. The policies of insurance were produced in evidence, with Alexander's receipts endorsed upon them, Mr. McBee testifying that the companies would not recognize his receipts, but required Alexander's before they would pay the money. All this goes to confirm the statement of defendant, that the money was paid in checks payable to Alexander, and it could not have been difficult to show when the checks were trans-

ferred to defendant, or when they were paid to him.   But even
if the checks had been collected before the compromise, and lay
in defendant's safe at the time, the money, according to the testi-
mony, was turned over to defendant to be applied to the repairs
or improvement of the building, and could not, without the con-
sent of Messrs. McBee and Alexander, have been diverted to
any other purpose, and the point is, under those circumstances,
wholly immaterial.

The next point of complaint of the presiding judge was that
he instructed the jury in regard to the insurance money as fol-
lows, to wit: "That the evidence tended to show that the policies
stood in Alexander's name, and that, if so, the money legally
belonged to him; that defendant said he considered it Alexan-
der's, though both Alexander and McBee seemed to have claimed
it; that if it was Alexander's or McBee's money, still if they
had held it the mortgage would have been credited with the
amount, and the incumbrances on the property could have been
reduced by that amount; that for this reason the creditors ought
to have been informed about it; that if it was omitted from the
statement innocently, it would not give the plaintiffs a right to
recover on that ground.   But if it was intentionally omitted, it
would be a fraud upon the creditors, and the plaintiffs would be
entitled to a verdict on that ground."   Plaintiffs insist that
whether the omission were intentional or the result of an inno-
cent mistake as to the bearing of the matter upon the value of
the securities, it was constructive fraud and sufficient to avoid
the compromise.

This is really the only point in the case affecting the verdict
of the jury, which I consider at all debatable.   In all other
respects the verdict of the jury was wholly unaffected by any
alleged error of the presiding judge, and is entirely satisfactory
to my view and conclusive of all the alleged frauds.   It is impor-
tant to bear in mind that the jury have negatived any fraudulent
intent on the part of defendant in his failure to disclose the fact
concerning the claim for the insurance money.   The only ques-
tion, therefore, in regard to it is, whether the innocent and unin-
tentional failure to make the disclosure ought to vitiate the set-
tlement between the defendant and his creditors.   If it was a

fact which it was his duty to disclose, and if the failure to disclose it may be supposed to have misled the creditors, and to have induced them to agree to the proposed compromise, which they would not have done had they possessed full knowledge of the facts, then it is true that to that extent the compromise would be liable to be set aside.

The property in question had been sold to the defendant by one Alexander, several years before the compromise, for $10,000, of which $3,000 were paid in cash, and the balance secured by a mortgage on the property, payable with interest in annual instalments of $1,000. At the time of the compromise $8,000 remained due on the mortgage. The mortgage debt had been assigned to Mr. Alexander McBee by Alexander as a security for six thousand dollars due by the latter to the former. To the extent, therefore, of $2,000, Alexander retained an interest in the mortgage after Mr. McBee should be satisfied therefrom. The policies of insurance on the property were in Alexander's name, though by him also assigned to Mr. McBee. The creditors appear to have regarded the encumbrance of $8,000, which was represented in the statement submitted to them by the defendant to be upon the property as sufficient to shut them off from any expectation of payment from that source.

There is evidence going to show that Alexander was not satisfied that the property, after the fire, would bring more than enough to satisfy Mr. McBee's debt of six thousand dollars. Mr. McBee said he felt secure of his money, and was willing that defendant should have the insurance money to do what he pleased with it. He said defendant might have thrown it into the river if he chose, so far as he (Mr. McBee) was concerned. Alexander, however, insisted that defendant should only have it upon the condition that it should be laid out on the building, in order to restore the security to its former value. Defendant says that after his compromise, Alexander consented to his using the money otherwise in his business and settling with his creditors, but still upon the express condition that a like sum should be laid out on the building. If Alexander's estimate of the value of the property as a security was correct, then it would require the insurance money and the property to secure the $8,000 due

on the mortgage to him and McBee, and if the creditors were of the like opinion, a knowledge of all the facts would not have affected their decision to accept the proposed compromise.

There is nothing to show that Alexander's estimate was not correct or reasonable. It is true that the property had sold for $10,000, on long time, but it had suffered a direct injury to the amount of $1,760 at least, and valuable buildings adjoining it had also been recently destroyed by fire, and it is not improbable that that would affect its marketable value until they were restored at least. If the creditors had been forced to resort to that property, they would have had to sell it subject to the rights of the mortgages. Who is to say it would have yielded them anything under the circumstances as they then stood? In the evidence before me, I cannot undertake to say that it would.

There is no evidence that the creditors were misled in any way. The plaintiffs were represented by their Mr. Frank, who was in Greenville for some days before the meeting of creditors, for the purpose of making an investigation into defendant's affairs. He was in defendant's store, the building which had been damaged by the fire in question. The fire had then recently occurred. He must have known of the fire. It is not reasonable to suppose that he made no inquiry as to whether there was an insurance upon the building, or as to the amount and condition of the fund. Many of the creditors were represented by astute and industrious attorneys, local lawyers. It is not reasonable to suppose that they were all ignorant of the fire, the insurance, and condition of the fund. These are not matters of a private nature. Nothing is more common than the publication in the newspapers of the amount of losses, and of the insurance on property destroyed or injured by a fire so destructive as this in a city like Greenville. Mr. McBee, who held the mortgage and claimed the insurance moneys, was present at the meeting of creditors representing his debt. He had no intent or motive in concealment upon this subject. He was incapable of acting upon it, if he had such motive. It did not seem to have occurred to him that the subject was one which was required to be brought to the notice of the creditors.

It is noticeable, too, that this concealment is not one of the

matters alleged in the complaint as a ground for attacking the compromise, and was first brought into the case by the defendant when giving testimony as a witness at the trial. It would seem, therefore, that the plaintiffs either continued in ignorance of what they now deem a most important fact for all these years, with the fullest opportunities of inquiring of Mr. McBee, Mr. Alexander, the insurance companies and agencies, the bank, and others having knowledge; or they considered the matter of no importance. When a matter is involved in so much doubt, I am not disposed to set aside a settlement like this, after so long a time, upon the mere possibility that the creditors might have insisted on better terms, had they known the facts.

There is another question which has occurred to me, during the investigation of this case, the solution of which is not favorable to the plaintiffs. They do not occupy such a position in relation to the subject as to entitle them to any special favor. They endeavored, by a side bargain, to get an advantage over the other creditors, by contracting with defendant for the payment to them of five hundred dollars, under the guise of compensation for using their influence with the other creditors, to induce them to accept the compromise, which they claim to have done by writing some letters and sending some telegrams. The bargain was rescinded by defendant the next day after it was made, as a wrong to other creditors; but it was afterwards insisted on by plaintiffs, with threats of litigation in other courts than that of South Carolina; when this failed, the present action followed, after the lapse of three years from the date of the settlement. No other creditor has joined in the complaint, nor is it a creditors' bill, but a suit solely for the benefit of the plaintiffs. All the allegations of fraud stated specifically against the defendant have been found by the jury in his favor.

The plaintiffs are placed in the position of having pursued the defendant without just cause. While a fraudulent debtor ought to be prosecuted and pursued ruthlessly for the public good, charges like these ought never to be made unless the proof be clear and convincing. Nor should a creditor, who has joined in a general composition, separate himself from his associates in such litigation. If in this case the fraud had been established, it would

have been the duty of the court to call in the other creditors before the master. Plaintiffs would not have been permitted to get the advantage over their associates in the compromise. If the settlement had been set aside only on account of the failure to mention the insurance money at the creditors' meeting, but without fraudulent intent on the defendant's part, the relief would have been confined to the distribution of that fund among the compromising creditors, and they must have been called in. If, however, the jury had found actual fraud, and the whole settlement had been thus vitiated, all the creditors would have been called in to share in the distribution of the defendant's assets.

Therefore, under such circumstances, a single creditor would not be allowed to sue alone. A demurrer would have laid to this complaint on this ground, or the objection might have been made in the answer. Not having been made, the defendant has waived it. In a meritorious case, the court would, under such circumstances of waiver, cure the irregularity by calling the creditors before the master. But the plaintiffs do not appear before the court under such a favorable aspect as to entitle them to the exercise of this administrative power of the court in their behalf, even if a stronger case had been made against the defendant. Mr. Justice Story, in his work on Equity Pleadings (§ 103), says: "A single creditor, in cases of this sort, would not be permitted by a court of equity to sue for his own single demand without bringing the other creditors in some form or manner before the court, from the obvious inconvenience and apparent injustice in deciding upon the extent of their rights and intents in their absence."

*Joy* v. *Wirtz* (1 *Wash. C. C.*, 417) was a suit in equity, brought by two creditors, for the purpose of setting aside a release made by all the creditors to a debtor, upon an assignment of his estate for their benefit. Mr. Justice Washington thought that all the creditors should have been made parties, or the bill should have been brought in behalf of all, for all of them might be affected by the decree setting aside the release, as it would not be set aside as to a part of the creditors, and left optional as to others. He stated the rule thus: "Where the creditors are to be paid out of a particular fund, or united in the same transac-

tion so as to produce a privity between them, all are to join in either by name or by being represented by a part serving in the names of all." The whole subject is discussed ably and fully in the case of *Johnston* v. *R. R. Bank*, 3 *Strob.*, 337, and especially in the dissenting opinion of Ch. Johnstone in that case.

On the whole case, therefore, it is ordered, adjudged, and decreed, that the findings of the jury upon the issues submitted to them herein be and they are hereby confirmed, and that the complaint herein be dismissed, and that the defendant have leave to enter up judgment against the plaintiffs for his costs and disbursements herein, and that execution issue therefor.

Plaintiffs appealed upon the following exceptions:

1. Because his honor erred in failing to decree that the $2,500 taken out of his store by the respondent and turned over to his wife shortly before the settlement, belonged to him, and was fraudulently concealed from his creditors.

2. Because his honor erred in not decreeing that the concealment of the $1,760 insurance money by respondent was a fraud upon his creditors, and that the settlement should be set aside on that ground.

3. Because his honor decided that the verdict of the jury negatived any fraudulent intent on the part of the respondent in his failure to disclose the facts about the insurance money to his creditors.

4. Because his honor erred in deciding that the appellants and other creditors must have known of the insurance money, when there was no evidence at all that they had any knowledge or even a suspicion of it, and all the evidence on that point shows that none of the creditors knew anything about it.

5. Because his honor erred in deciding that the creditors did not regard the insurance matter as of any importance, because none of them had discovered it before the trial of this action on the Circuit.

6. Because the duty of the respondent to know his rights as to the insurance money, cannot be overcome by his feigned ignorance thereof.

7. Because the respondent's testimony showed that at the

meeting of creditors he falsely represented the mortgage of Mrs. Thurston to amount to $660, when in fact he only owed $600 on it.

8. Because the testimony of the respondent shows that at the time of the creditors' meeting he had property outside of what was represented by him to his creditors.

9. Because the respondent wilfully and knowingly misrepresented the extent and condition of his property to his creditors at the time of the compromise, and for that reason his honor should have decreed for the appellants.

10. Because the respondent wilfully concealed facts which it was his duty to disclose to his creditors, and for that reason his honor should have decreed in favor of the appellants.

11. Because his honor erred in attempting to define what misrepresentations of the respondent would or would not be sufficient to influence the minds of the creditors in accepting the compromise.

12. Because his honor should have held that a composition with creditors being a bounty bestowed upon the debtor, the utmost good faith is required in his representations of his assets, and creditors are not required to investigate for themselves, but may rely wholly upon debtor's statements.

13. Because his honor directed that there was no evidence that the creditors were misled in any way.

14. Because his honor accepted the verdict of the jury as conclusive of all alleged frauds in favor of the respondent, and made his decree in accordance therewith, without coming himself to a conclusion as to said frauds.

15. Because his honor erred in deciding that the jury had specifically found all the allegations of fraud against the appellants, and in decreeing that the findings of the jury upon the issues submitted to it be confirmed, when in fact no specific issues had been submitted to it.

16. Because his honor having erred in his statement of the respondent's testimony in reference to the insurance money to the jury, and also in charging the jury that if the insurance matter was omitted from the statement to the creditors innocently, the appellants could not recover, which points were made mate-

rial by the effect which was given to them, the verdict cannot be allowed to stand, and his honor erred in refusing to entirely disregard it in making up his decree.

17. Because his honor erred in stopping appellants' counsel in the closing argument because he did not, as his honor thought, state all that respondent had testified to on a particular point.

18. Because his honor erred in interrupting appellants' counsel, and in stating to the jury that the respondent had not sworn at the time he made the offer of compromise he had the insurance money in his safe; and he erred further when the counsel appealed to the recollection of the jury, by again interrupting him and saying that counsel could not appeal from his statement of the testimony to the recollection of the jury, and that the jury must take the testimony from his notes, from which he read in part.

19. Because his honor erred in deciding that this action was not meritorious because the appellants had attempted at the time of the settlement to get something for their services in making the settlement.

20. Because his honor having decided upon the objection of the appellants that it was not competent for the defendant to give in evidence any conversation between himself and Alexander, who was dead at the time of the trial, it was error for him to allow it to go as evidence to the jury, and to use it as proof in making up his decree.

*Messrs. Wait & Westmoreland*, for appellants.

*Messrs. Perry & Heyward, A. Blythe*, contra.

March 8, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The defendant, a merchant at Greenville, being in failing circumstances, called his creditors together, and effected a compromise at forty cents on the dollar. The plaintiffs attended the meeting, and, consenting to the compromise, received their *pro rata* and receipted the defendant in full. Afterwards they instituted the action below, alleging that defendant had falsely represented his ability to pay, and that at

the time his creditors accepted his offer of compromise he was able to pay in full, which he kept concealed for the purpose of defrauding his creditors, with other circumstances of fraud, and they prayed that the compromise be declared void and the payment of forty cents on the dollar be regarded as a payment *pro tanto,* and that they might have judgment for the balance of their debt, to wit, $1,914.20, with interest.   The defendant denied the fraud.

Upon the call of the case on calendar I., Judge Kershaw presiding, "it was determined, without objection, that all issues, and. especially the two issues of fraud or no fraud and the amount due, if they should find for the plaintiffs, be referred to the jury. without framing any issues specially."   The plaintiffs made several requests to charge, all of which his honor charged.   The verdict was for the defendant, whereupon, it being conceded by the counsel on both sides that the case was a case in chancery, to be decided by the court upon the facts as settled by the verdict, so far as the court was satisfied therewith, his honor, after taking the papers and full time for consideration, filed a written decree, in which he confirmed the verdict, and dismissed the complaint with leave to defendant to enter judgment and execution for his costs and disbursements.

The appeal presents a number of exceptions in form, twenty in all.   The first sixteen, however, may be consolidated under one head, to wit, because his honor confirmed the verdict, when he should, in the opinion of the appellant, have disregarded it, and have found the compromise fraudulent for the causes stated in these exceptions.   The 17th and 18th assign error because his honor interrupted appellant's counsel in his argument, and corrected his statement of the testimony, in certain particulars, in which his honor thought counsel was mistaken.   19th, because his honor "decided the action was not meritorious," the appellant having attempted at the time of settlement to get something for their services in making the settlement.   And the 20th, "because his honor, having decided upon the objection of the appellant that it was not competent for the defendant to give in evidence any conversation between himself and Alexander, who was dead at

the time of the trial, it was error for him to allow it to go to the jury, and to use it as proof in making up his decree."

The appellant's counsel have not discussed their exceptions *seriatim,* but submitted their argument under several propositions. First proposition: That his honor erred in refusing to set aside the verdict, (1) because his honor erred in refusing to submit specific issues of fact to the jury upon plaintiffs' motion, and in submitting the whole case, the issues of law as well as of fact. We find it stated in the "Case," that after some discussion by counsel, it was determined, without objection, that all issues, &c., should be referred to the jury. Besides this, there is no exception which raises this question. This subdivision, therefore, and the discussion under it must be passed over.

(2) "Because his honor erred in stopping plaintiffs' counsel in the manner he did, and in stating only a part of defendant's testimony on a given point, and in telling the jury they must decide according to his notes of testimony as read to them" (16th and 17th exceptions). No error of law can be assigned to a Circuit Judge for correcting counsel in their statements where he, the judge, conceives that a mistake as to the testimony is being made. While the judge, under the constitution, cannot charge upon the facts, yet it is his duty to take down the evidence, or have it taken, and so far as what is said by the witnesses, he is arbiter between counsel, and his notes of testimony may be read. From what is said in the "Case" as to what occurred, we not only see no legal error affecting the issues involved, but we think his honor was quite within his power over the conduct of the business before him when he ruled that plaintiffs' counsel must not appeal from his notes of the testimony to the recollections of the jury, which, before the counsel's disclaimer, he, the judge, thought was rudely made, as it is stated. Counsel have the right to defend their clients' interests with earnestness and ardor, and it is commendable for them to do so, but their zeal should be restrained within proper bounds, and to this end much should be left to the discretion of the court.

(3) The next subdivision under the first proposition is, "Because his honor erred in charging the jury, that if the defendant innocently omitted to mention the insurance money, or to include

it in his statement of assets, it was no fraud.'' If the case was a case at law, and the presiding judge had charged the jury in the general terms as stated, doubtless it would have been error, as even an innocent omission of property, where the creditors are relying upon the statements of the debtor, might vitiate the compromise, at least to the extent of the value of the property thus omitted. But this is not a case at law—it is a case in chancery, and the reference to the jury was to inform the chancellor's conscience. He was not bound by the verdict; in fact, under the law, even after verdict, he was not relieved from examining for himself and finding his own conclusions. This, it seems, he did. In his well considered written decree, he discusses this very matter fully and satisfactorily, to which we refer.

In it, it appears that the policies of insurance were in the name of one Alexander, from whom the defendant had bought the property insured, though they had been assigned to McBee, who held them and the mortgage on the premises to secure a debt of $8,000, $6,000 of which belonged to McBee and the remaining $2,000 to Alexander. The property had been considerably injured by fire, and Alexander was not satisfied but that it would take the insurance money as well as the property in its then condition to indemnify McBee and himself, and he claimed the insurance money as his. Under these circumstances, the defendant did not estimate it as a portion of his assets, to be used in compromise with his creditors. It is true that he did use it afterwards in settling with his creditors, but this was done with the consent of Alexander, and with the express understanding that a like sum should be expended by Humphreys in repairing the property, so as to reinstate it as a security for the mortgage debt. And it was upon these grounds that the judge held, for himself, that the failure of the defendant to mention this money at the compromise was not fraudulent, express or implied. So that his charge to the jury, whether in the abstract right or wrong, was not material. Even supposing that the verdict was influenced thereby, yet his honor went behind the verdict and decided for himself, as was his right and duty. We think his finding and ruling in this respect was correct.

It will not be necessary to consider the other propositions

severally on the question of fraud, or their subdivisions. They resolve themselves into a general allegation, that his honor erred in not finding fraud, actual and intentional, or, at least, implied and constructive, and, therefore, the composition should have been vacated. The fact of fraud, or its existence in a transaction, when alleged, is always a question of fact, and although when it comes before this court in a case in chancery we are at liberty to look into and pass upon it, yet our examination is subject to the familiar principle, that we should not disturb the finding below, except where that finding is wholly unsustained by the evidence, or is manifestly against its weight.

Now, wherein is the decree objectionable as to either of these rules? The specific allegations of fraud alleged in the complaint are, 1st, that the defendant sought to account for his deficiency in assets, because he had unexpectedly been called upon to pay a large sum to the United States Government by reason of some connection with a distillery; and, 2d, that the defendant falsely represented his ability to pay his debts, having more property than stated, which he kept concealed from his creditors. Nothing is said in the exceptions in regard to the distillery; we must, therefore, regard that charge as satisfactorily explained. The other misrepresentations as to the amount of property on hand, or that should have been on hand, specified in the exceptions, were $2,500 alleged to have been taken from the store and turned over to defendant's wife, just before the compromise; also $1,760, the insurance money, and a mortgage of Mrs. Thurston put down by him at $660, when it should have been $600. We have looked into the testimony as to these matters, and we cannot see that his honor's refusal to set aside the compromise was wholly unsupported, or against the weight of the testimony as to these matters. And the same may be said as to the other exceptions in which the appellants allege, generally, that the evidence showed that the defendant had other property than that disclosed, &c., and that his honor erred in confirming the verdict, &c.

The 19th exception raises no question of law or fact.

As to the 20th. It appears that his honor sustained appellants' exception to conversation with Alexander, and if he afterwards permitted it to go to the jury, we have not found such fact

in the "Case"; but even if he did, it would not be sufficient to reopen the case, and have the matter reinvestigated. The main question involved was one of fraud in the conduct of the defendant. This question has been passed upon by a jury after full and most thorough examination and argument. The verdict was for the defendant. This verdict the Circuit Judge has confirmed, and made its result his finding—not hastily, but after taking the papers and giving the case mature consideration, as is apparent from his decree. Under these circumstances, it should require a stronger showing than that made by the appellants, to overthrow the judgment.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.